**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

NESTOR CAPEZANO

     Plaintiff

v.                                                    **Civil No. 10-1281 (SEC)**

ARCOR SAIC; ARCOR USA, INC. D/b/a
NUTREX CORP.

     Defendant

**OPINION and ORDER**

     Before the Court is Defendant ARCOR SAIC and ARCOR USA, Inc. d/b/a Nutrex
Corp.'s ("Defendant") Motion to Dismiss (Docket # 6), Plaintiff's opposition thereto (Docket
#12), and Defendant's reply (Docket # 15). Upon reviewing the filings, and the applicable law,
Defendant's motion is **GRANTED in part and DENIED in part**.

     **Factual and Procedural Background**

     On April 5, 2010, Plaintiff filed suit against Defendant, alleging unjust dismissal,
discrimination by reason of national origin, retaliation and violations to the Consolidated
Omnibus Budget Reconciliation Act ("COBRA").  Docket # 1. According to the complaint,
Plaintiff was harassed, discriminated against and eventually terminated from his employment
due to his national origin.  Plaintiff further contends that he was terminated in retaliation for
meeting with officials from the Food and Drug Administration ("FDA") to discuss Defendant's
non-compliance with FDA regulations, and informing Defendant about their products' lack of
compliance with the same. Lastly, Plaintiff avers that Defendant failed to inform him about his
various rights under COBRA.

     Pursuant to the complaint, Plaintiff is an Argentinian male who worked for Defendant
since 1998 until his termination on June 30, 2009. Docket # 1, p. 3. In 2005, Plaintiff was
transferred to the Miami subsidiary office of Arcor Saic, named Arcor USA Inc. d/b/a Nutrex

Corp. Among his duties, Plaintiff was in charge of selling Defendant's products in Puerto Rico, among other areas. After his transfer, he informed his Arcor/Nutrex supervisor, Isaac Espinoza ("Espinoza"), and his supervisors from Arcor Saic that their products did not comply with FDA regulations.

Plaintiff then met with FDA officials to discuss the situation, providing them with information about Defendant's products and discussing remedial actions to make said products FDA compliant. Thereafter, Plaintiff informed Defendant about the FDA's findings and his meeting with FDA officials. On several occasions, Plaintiff insisted that Defendant's products did not meet FDA standards and warned Defendant that its products could not be sold in Puerto Rico due to their non-compliance with regulations. Plaintiff alleges that, at that juncture, Defendant "constantly threatened" him, warning him that if he did not sell its products, and insisted with his complaints regarding FDA compliance, he would be terminated. Furthermore, Defendant continued distributing the products in question and again threatened to discharge Plaintiff if they received any notice from the FDA. Docket #1 ¶ 10.

On June 11, 2010, Defendant moved for dismissal under FED. R. CIV. P. 12(b)(6)(Docket # 8), Plaintiff opposed (Docket # 12), and Defendant replied (Docket # 15).

**Standard of Review**

*FED. R. CIV. P. 12 (b)(6)*

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. First Med. Health Plan, Inc. v. CaremarkPCS Caribbean, Inc., 681 F. Supp. 2d 111, 113-114 (D.P.R. 2010)  (citing Fed.R.Civ.P. 12(b)(6)). When deciding a motion to dismiss under Rule 12(b)(6), the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." First Med. Health, 681 F. Supp. 2d  at 114 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). In so

doing, the court construes the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Id. (Citing Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008)); see also Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 34 (1st Cir. 2002); Correa Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." First Med. Health, 681 F. Supp. 2d at 114 (citing Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009)). Specifically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Iqbal, 129 S. Ct. at 1949. As such, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]'–'that the pleader is entitled to relief.'" First Med. Health, 681 F. Supp. 2d at 114 (citing Iqbal, 129 S. Ct. at 1950 (quoting FED.R.CIV.P. 8(a)(2)).

In sum, when passing on a motion to dismiss the court must follow two principles: (1) legal conclusions masquerading as factual allegations are not entitled to the presumption of truth; and (2) plausibility analysis is a context-specific task that requires courts to use their judicial experience and common sense. Id. (citing Iqbal, 129 S. Ct. at 1950). In applying these principles, courts may first separate out merely conclusory pleadings, and then focus upon the remaining well-pleaded factual allegations to determine if they plausibly give rise to an entitlement to relief. Id. (Citing Iqbal, 129 S. Ct. at 1950).

The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi

**CIVIL NO. 10-1281 (SEC)**                                                      **Page 4**

v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. However, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus Plaintiffs must rely in more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007) (citing Twombly, 127 S. Ct. at 1965). Although complaints do not need detailed factual allegations, the "plausibility  standard is not akin to a 'probability requirement,'but it asks for more than a sheer possibility that a defendant has acted unlawfully." Twombly, 127 S. Ct. At 1965; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. At 1965. That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008).

### Applicable Law and Analysis

In the complaint, Plaintiff sets forth claims under Puerto Rico Laws 100, 80 and 115. It is well-settled that courts must address any jurisdictional issues as early as practicable. On this point, the Supreme Court has held that, in order for the Court to hear a case, subject matter jurisdiction must "be established as a threshold matter." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998).  Subject matter jurisdiction is granted to federal courts by either "28 U.S.C. § 1331, which provides for '[f]ederal-question' jurisdiction, [or] § 1332, which provides for '[d]iversity of citizenship' jurisdiction." Arbaugh v. Y&H Corp., 546 U.S. 500, 501 (2006).

In light of the particular facts of this case, the applicability of the Commonwealth laws is in question. Albeit the specific set of facts presented in this case has not been expressly addressed by the relevant courts, the general policy arising from the applicable case law suggests that Puerto Rico's employment laws do not apply to employees that work outside of Puerto Rico for a non Puerto Rico based company.

In Green Giant Co. v. Tribunal Superior, 104 P.R. Decs. 489, 4 P.R. Offic. Trans. 682 (1975), the Puerto Rico Supreme Court held that Puerto Rico's constitutional guarantee to overtime compensation did not apply to Puerto Rican migrant workers who performed agricultural work in the United States for non Puerto Rico based employers.  See Torres v. Merck & Co. Inc., 376 F. Supp. 2d 121, 127 ((D.P.R. 2005). The Court based its decision upon the fact that privileged treatment of Puerto Rican workers working outside of Puerto Rico would foreclose future opportunities for Puerto Rican migrant workers in the United States.

Thereafter, in Garcia v. American Airlines, Inc., 12 F.3d 308, 313 (1st Cir. 1993), a plaintiff was denied coverage under Commonwealth laws for a work related injury despite being a flight attendant based in Puerto Rico, because his employer provided workers' compensation

benefits through a policy in Florida. Based on the Puerto Rico Supreme Court's decision in Green Giant and an opinion and letter issued by the Commonwealth's Secretary of Justice, the First Circuit noted that "the Commonwealth expressly disclaimed an interest in covering employees who do most of their work outside Puerto Rico." Citing the Secretary of Justice opinion and letter, the appeals court then stated that "flight attendants who perform more than 50% of their work [outside of Puerto Rico] are excluded from the coverage of the Commonwealth's labor laws..." Id. Albeit the Court recognized that the Secretary's opinion did not expressly address the workers' compensation statute in question, they interpreted the same as encompassing all Commonwealth legislation governing the employer-employee relationship. Accordingly, therein plaintiff was not entitled to the remedies afforded by Commonwealth employment laws, and his only remedy arose under Florida's laws.

Notwithstanding, in Almodovar v. Margo Farms del Caribe, Inc., 148 P.R. Dec. 103 (1999), the Puerto Rico Supreme Court limited its holding in Green Giant, and established a different policy as to the extraterritorial reach of Puerto Rico's employment laws. See Torres-Negron, 376 F. Supp 2d at 128. In Almodovar, the plaintiff, a Puerto Rico employee of a corporation doing business under the laws of Puerto Rico, who performed the majority of his work in the Virgin Islands, filed suit against his employer for unpaid overtime wages under Puerto Rico employment law. Upon noting the differing factual background in that case, the Court concluded that Puerto Rico employment laws covered employees of a company doing business under the laws of Puerto Rico who was temporarily assigned to work outside of Puerto Rico.

Recently, in <u>Torres-Negron</u>, <u>id.</u> at 129, the First Circuit applied <u>Almodovar</u>[1] upon finding that Puerto Rico employment laws applied to a plaintiff that was at all times employed and paid by Merck Puerto Rico, who was temporarily assigned to Merck's Mexico affiliate pursuant to the terms and conditions agreed upon by Merck Puerto Rico and Plaintiff, and whose apartment in Mexico was paid by Merck Puerto Rico.  In reaching its decision, the Court emphasized the fact that plaintiff was a Puerto Rico employee, working for a company doing business under Puerto Rico law, and who was assigned to work in Mexico on a temporary basis. Thus her ties remained with Merck Puerto Rico.

This Court notes that although <u>Garcia</u> was decided before <u>Almodovar,</u> they are not irreconcilable; instead, they address different sets of facts. Moreover, they both support the proposition that an employee who works outside of Puerto Rico, in a non Puerto Rico based company, is not covered by Commonwealth employment laws.

Pursuant to the complaint, Plaintiff was at all relevant times an employee of a foreign corporation headquartered in Argentina, and with a subsidiary in Miami, Fl. Specifically, Plaintiff started working for Defendant in Argentina in 1998, and was transferred to the Miami subsidiary office in 2005, where he worked until his termination in 2009. Therein, Plaintiff was in charge of selling products in Puerto Rico, among other territories. Therefore, Plaintiff was not employed by a Puerto Rico based employer nor worked in Puerto Rico at any time. As a matter of fact, his employment with Defendant was always outside of Puerto Rico, and all his allegations regarding discrimination, retaliation and his termination arose while he lived and

---

[1]   This Court pointed out that "[a]lthough Green Giant has been cited for the general proposition that Puerto Rico laws do not have extraterritorial reach, to date, it appear[ed] that the portion of the Puerto Rico Supreme Court decision in Almodovar that pertains to the extraterritorial reach of the Commonwealth's labor laws has not been cited or discussed by any court." <u>Torres-Negron</u>, 376 F. Supp. 2d at 128.

worked for Defendant in Miami. The only reason he filed the present suit in this district stems from the fact that he now resides in Puerto Rico. This alone, however, is insufficient to confer jurisdiction upon this Court for purposes of claims under Law 100, 80 and 115, especially considering the above cited case law. Allowing Plaintiff to seek relief under Puerto Rico employment laws under these circumstances clearly contradicts said case law and the existing policy of limiting the  applicability of Commonwealth employment laws to employees who work for Puerto Rico based employers. Accordingly, we find that Plaintiff is not covered by Commonwealth employment laws, and as such, his state law claims are **DISMISSED with prejudice**.

*National discrimination claims*

Although Plaintiff does not specifically set forth claims under Title VII, he seeks relief under "the laws of the Commonwealth of Puerto Rico and the United States of America." Docket # 1, p. 7.

Title VII provides a "vehicle through which an individual may seek recovery for employment discrimination on the grounds of race, color, religion, gender or national origin." Franceschi v. United States VA, 514 F.3d 81,85 (1st Cir. 2008). It prohibits an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms conditions or privileges of employment, because of such individual's … national origin." 42 U.S.C. § 2000-e-2(a)(1). It is well-settled that an employee alleging discrimination must file an administrative claim with the Equal Employment Opportunity Commission ("EEOC") or with a parallel state agency before a civil action may be brought in federal court. Thornton v. UPS, Inc., 587 F.3d 27, 31 (1st Cir. 2009).[2] The First Circuit has held

---

[2]  A discrimination charge must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred, or within 300 days when filed with a state agency.  42

that "a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door." Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005). In the present case, Plaintiff did not file an administrative charge with the EEOC or a parallel state agency. Accordingly, any discrimination claims under Title VII are barred for failure to exhaust administrative remedies.

As such, Plaintiff's Title VII discrimination claims are **DISMISSED with prejudice**.

*Retaliation claims*

We note that albeit Plaintiff's retaliation claims are explicitly brought forth under Puerto Rico Law No. 115, P.R. Laws Ann. tit. 29, § 194a *et seq,*[3] he also alludes to the laws of the United States of America. Accordingly, we will consider Plaintiff's allegations under federal law.

Title VII's anti-retaliation provision seeks to prevent employers from retaliating against an employee for attempting to enforce rights under Title VII. 42 U.S.C. § 2000e-3(a); see also DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir.2008). Said provision makes it illegal "for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under said subchapter. 42 U.S.C. § 2000e-3(a).

A plaintiff seeking relief under Title VII for retaliation must set forth a *prima facie* case by showing that (1) he engaged in a protected activity under Title VII; (2) he suffered an adverse employment action and (3) a causal connection exists between the protected activity and the adverse employment action. Gu v. Boston Police Department, 312 F.3d 6, 14 (1st Cir. 2002). It is well-settled that termination constitutes an adverse employment action. Szendrey-Ramos

U.S.C.A. § 2000e-5.

    [3]  Puerto Rico Whistleblower's Act is Law 115.

v. First BanCorp, 512 F.Supp.2d 81 (D.P.R. 2007).  Furthermore, workplace harassment may "in and of itself" constitute an adverse employment action sufficient to satisfy the second prong of the *prima facie* case for Title VII retaliation cases, if it is sufficiently severe or pervasive. Noviello v. City of Boston, 398 F.3d 76, 89 (1st Cir. 2005). More to the point, the First Circuit has ruled that intensification of harassment after engaging in protected activity meets the "materially adverse action" standard. Agusty-Reyes v. Dept. of Educ. of Puerto Rico, 601 F.3d 45, 57 (1st Cir. 2010).

        Plaintiff argues that after his involvement with FDA officials, Defendant retaliated against him by starting a "harassment and discrimination campaign," and eventually dismissed him. Docket # 1, p. 4. In their request for dismissal, Defendant argues that Plaintiff fails to satisfy Iqbal's pleading requirements as to his retaliation claims. In the alternative, they contend that Plaintiff did not engage in the requisite protected activity. In opposition, Plaintiff avers that he was harassed, and later discharged, after verbally offering information to the FDA about Defendant's products' non-compliance with their regulations.

        It is undisputed that Plaintiff suffered an adverse employment action when he was terminated. This Court, however, finds that Plaintiff's allegations regarding retaliatory harassment fail to meet the applicable threshold, since he fails to set forth sufficient factual allegations showing the requisite pervasiveness and consistency.  In the complaint, Plaintiff allegations are made in very general terms and without any specific details as to facts, dates or circumstances that show Defendant's retaliatory animus. His allegations regarding retaliation for reason of his national origin are the following: "defendant's officials constantly threatened [him] by telling him that if he did not sell Arcor's products, and continue[d] with his complaints regarding the failure to comply with the FDA, he was going to be terminated," Docket # 1, ¶ 9; defendant "threatened [him] by telling him that if the company received any notice from the

FDA, he was going to be discharged," id. at ¶10; "immediately after [his] involvement with FDA officials, [defendant] started a harassment and discrimination campaign against [him], due to his national origin, his complaints [due to] defendant's products' lack of compliance with the rules and regulations of the FDA, and with regards to his involvements with FDA officials," id. at 11; his supervisor, Espinoza, "was constantly making discriminatory and derogatory comments about [hi]s national origin," id. at 12; "defendant's officers were constantly making discriminatory comments and threatened [him] with termination, due to his complaint about defendant's products' lack of compliance" with FDA regulations, id. at 13; and defendant's officers ignored him and did not communicate with him at all, id. at 14.

Pursuant to Iqbal and Twombly, a plaintiff must set forth more than labels and conclusions, and a formulaic recitation of the elements of his cause of action. Merely repeating ad nauseam that he was harassed by Defendant because of his national origin and in retaliation for engaging in protected conduct, absent specific factual information about who made the alleged comments, their content and when they took place, is insufficient to survive dismissal at this stage. This Court is not bound to accept as true legal conclusions couched as factual allegations; legal conclusions must be supported by facts.

There is also disagreement as to whether Plaintiff engaged in "a protected activity" when he met with FDA officials to discuss Defendant's products' lack of compliance with said agency's regulations. At first glance, a protected activity under Title VII does not seem to encompass meeting with FDA officials. Title VII, instead, protects those employees that, for example, have filed a discrimination charge with the EEOC or participate in any manner in an investigation, proceeding or hearing in an employment action involving the employer. 42 U.S.C. § 2000e-3(a); see Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d. 6, at 25. (1st Cir. 2004). Plaintiff's communications with the FDA, and his complaints to Defendant regarding their

products' non-compliance with FDA regulations has nothing to do with Defendant's employment practices. See Bonds v. Leavitt, 647 F. Supp 2d 541, 569 (D. Md. 2009). He has not participated in any investigation, proceeding or hearing involving Defendant's employment practices. Hence, we conclude that the alleged protected activity does not fall under Title VII's protection.

Moreover, even assuming *arguendo* that Plaintiff's communications with FDA officials is a protected activity, and that his termination constitutes the adverse employment action, Plaintiff fails to meet the third prong of the test: causation. To show causation purely on the basis of mere temporal proximity between the employer's knowledge of the protected activity and an adverse employment action, the temporal proximity must be very close. Calero-Cerezo, 355 F.3d. at 24. Herein, Plaintiff alleges he communicated with FDA officials immediately after being transferred to the Miami subsidiary, that is, in 2005. Notwithstanding, Plaintiff was terminated in June 2009. Thus there is insufficient temporal proximity to establish causation.

As such, Defendant's request for dismissal of Plaintiff's Title VII retaliation claims is **GRANTED.**

*COBRA claims*

COBRA requires employers to give employees the opportunity to continue health care coverage for a specified period of time after a "qualifying event," at the employee's expense. 29 U.S.C. § 1161(a); Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 103 (1st Cir. 2004). Termination of employment, as is pleaded in the complaint, is considered a qualifying event. 29 U.S.C. § 1163(2). COBRA also requires employers to notify health care plan administrators of the termination within 30 days of the qualifying event. Id. § 1166(a)(2). Thereafter, the plan administrator must notify the qualified beneficiary within fourteen days of his right to continued coverage. Id. § 1166(c).

**CIVIL NO. 10-1281 (SEC)**                                                              **Page 13**

Plaintiff alleges that Defendant violated 29 U.S.C. § 1166 by failing to give him timely notice that he could continue his health care coverage at his own expense. In their motion, Defendant does not address Plaintiff's COBRA claims. As such, dismissal of Plaintiff's COBRA claims is unwarranted at this juncture.

**Conclusion**

Based on the foregoing, Plaintiff's Title VII discrimination and retaliation claims, and his state law claims are **DISMISSED with prejudice.**  Notwithstanding, Plaintiff's claims under COBRA remain pending before this Court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this day of 20th day of October, 2010.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge